## WHITSON v. WRENN.

(Filed December 18, 1903).

1. NEGLIGENCE—*Master and Servant—Personal Injuries.*

> Where a servant chooses to do the work, which it is his duty to do, by a method known to him to be dangerous, contrary to the directions of the master, the master is not liable for an injury caused thereby, whether the danger be obvious or not.

2. NEGLIGENCE—*Master and Servant.*

> Where a servant was injured by the fall of a truck which it was his duty to move, and which fell by reason of his effort to move it, the master's responsibility does not depend on the "liability" of the truck to fall, since he is only required to provide against what he could reasonably have foreseen would result from any defect in the appliance.

ACTION by Alney Whitson against T. F. Wrenn, heard by *Judge B. F. Long* and a jury at August Term, 1903, of the Superior Court of McDOWELL County. From a judgment for the plaintiff the defendant appealed.

*E. J. Justice,* for the plaintiff.
*Avery & Ervin,* for the defendant.

WALKER, J. The plaintiff was an employee of the defendant in his furniture factory, and while engaged in his work received injuries which he alleges were caused by the defendant's negligence. At the time he was injured he was engaged in loading trucks with lumber, placing the same in the kiln for the purpose of drying the lumber, and moving them from the kiln, when the lumber was dried, to the factory. The evidence tended to show that each of the trucks was made of two pieces of lumber six by ten feet long, fourteen inches wide and two inches thick, which were nailed together with

four-inch blocks between them, at each end and at the middle, and near each end there were wheels. The trucks were about six feet long by ten inches high and were eight inches wide, and when placed on the rails they would not stand without being held or supported until they were partly loaded with lumber placed across them. There was no axle or connecting rod between these separate trucks. The trucks held about four thousand feet of lumber, and when they were loaded the kiln was full from side to side and to within eighteen inches of its top. The plaintiff was directed by the foreman, or superintendent, in removing the loaded trucks from the kiln to go behind or in the rear of them, and instead of doing so on this occasion he went under the truck, which he was attempting to remove, and applied the force or pressure from beneath, and by reason thereof the trucks fell and he was injured.

It is not necessary to state any more of the testimony in order to present the points upon which the case is decided.

The defendant requested the Court to give the following instruction: "If the jury find from the evidence that the plaintiff was directed in removing the lumber from the kiln to go behind or in the rear of the trucks and apply pressure from behind or in the rear of the trucks in order to remove the same from the kiln, and you further find that this was a safe way and that if it had been done the plaintiff would not have been injured, and you further find that the plaintiff, instead of adopting this method, went under the truck which was to be removed from the kiln and applied force from under and below the truck and was injured in consequence of so doing, then the plaintiff's own negligence was the proximate cause of the injury, and you should answer the first issue 'No'."

The Court refused to give this instruction as it was asked to be given by the defendant's counsel, but gave it with this modification: That in order to answer the first issue "No,"

under the instruction prayed for, the jury, must, in addition to the facts stated therein, further find that the method of applying the force to the loaded truck as used by the plaintiff, that is, by pushing the truck from beneath, "was obviously dangerous and that plaintiff knew it or could have known it by the exercise of due care."

We do not think that the modification of the instruction by the Court was correct. It can make no difference whether the method employed by the plaintiff for moving the truck was obviously dangerous or not. This is not the case of a servant who is ordered or commanded by his master, or by some one having authority over him, to perform a certain duty when obedience to the order will be attended with obvious danger. It is the duty of the servant, it is true, to obey the orders given to him unless obedience to them will be obviously dangerous; in which case he has the right, and it is his duty to himself, to disobey them. The law requires that he should do so or suffer the consequences of his recklessness. Our case is the very converse of the one stated. Here the servant was ordered to do his work in a safe way, and he preferred to do it in another and what proved to be a dangerous way Why should the master be liable if the servant acted in disobedience to his orders and was thereby hurt? It must be admitted that he was the author of his own injury. If it was necessary that the method adopted by him should have been not only in disobedience of his orders but in itself dangerous, in order to visit upon him the consequences of his refusal to observe his master's directions, it surely is not required that it should have been obviously dangerous. It is quite sufficient to bar his recovery if he knew that his method was a dangerous one and chose to do his work in that way rather than in the manner pointed out by his master. Why should the danger be obvious if he had knowledge of it? If it had appeared that obedience to his master's orders as to the man-

ner of moving the truck was obviously dangerous he had a right to refuse to do the work, but even then he could not select another and dangerous way to do it and charge his master with the consequence thereof, and especially if the danger of the method which he adopted was known to him at the time.

It is true that in *Loyd v. Hanes,* 126 N. C., 359, this Court said: "It is only where a machine is so grossly or clearly defective that the employee must know of the extra risk that he can be deemed to have voluntarily and knowingly assumed the risk." It will be observed that the reference to the obviousness of the defect in the machine was made by the present *Chief Justice,* in speaking for the Court in that case, for the purpose of showing that the servant must be in some way charged with knowledge of the defect. It is the knowledge of the defect and the consequent danger to himself that bars his recovery if the servant chooses a dangerous method of doing the work, instead of a safe one or the one pointed out by his master, and it makes no difference how that knowledge is acquired, or whether it is actual knowledge or such as must be implied from the obviousness of the defect and the fact that the danger is not only apparent but manifest. In *Loyd v. Hanes* the Court was referring to the case of a servant who was acting under instructions from the master to use a dangerous machine or to do a particular act which was in itself dangerous, but which was not obviously so, and not to a case like ours, where the servant departed from the instructions he received from his master and chose to act upon his own judgment. The question involved in the case of *Loyd v. Hanes* related to the voluntary assumption of risk which was incident to the service, and the Court distinguished between the mere knowledge of a defect in the machine which made it dangerous and the voluntary assumption of risk by the servant, while the case at bar, so far as this particular

instruction of the Court is concerned, does not involve the doctrine of the assumption of risk so much as it does the disobedience of orders, which was the proximate cause of the injury to the plaintiff. The two cases depend upon entirely different principles.

The plaintiff in this case has simply done something which his master virtually told him not to do. He substituted his own will for that of his employer, and his case comes within the maxim *volenti non fit injuria.*

No man by his own voluntary and wrongful act can impose a liability on another, nor will he be permitted to take advantage of his own wrong and wilfullness. The doctrine that a servant is not negligent in undertaking the performance of a dangerous work for his master unless there is obvious danger in it is a correct principle, and is strikingly illustrated by several cases decided by this Court. *Thomas v. Railroad,* 129 N. C., 392; *Allison v. Railroad,* 129 N. C., 336; *Patton v. Railroad,* 96 N. C., 455. A passenger who has been injured by alighting from a moving train under the direction of the conductor may recover for the injuries received, unless the act itself was obviously so dangerous that in its careful performance the inherent probabilities of injury were greater than those of safety. *Hinshaw v. Railroad,* 118 N. C., 1047. But this principle has no place in this case. Instead of the plaintiff having been commanded to do a dangerous act, it is assumed in the instruction, and there was evidence to show, that he was ordered to do the particular work assigned to him in a safe way, but elected to do it in his own way, which turned out to be a dangerous one, and which actually resulted in his injury. The law, under such circumstances, refers the injury to his own fault and not to any wrong on the part of his employer.

The instruction contained in plaintiff's third prayer should not have been given, as it was apt to mislead the jury. The

defendant's responsibility to the plaintiff for any injury received while in the performance of his duty did not and could not depend upon the *liability* of the trucks to fall. Such an instruction as that given by the Court in response to plaintiff's third prayer has been disapproved by this Court in *Williams v. Railroad,* 119 N. C., 746. The employer is not only required to provide against what he could reasonably have foreseen would result from any defect in the machine which he requires his servant to use, and not against the consequences of accidents that may or may not occur. It was, therefore, held in *Williams v. Railroad, supra,* that where a servant was injured by the falling of a piece of timber which was being raised by a rope fastened to it, it was error to charge the jury that the defendant, the master, was negligent if the rope was so fastened to the timber as to be "liable" to slip off, so that the timber would fall and injure the servant who was at the time assisting in the work of raising it.

There was error in modifying the defendant's prayer and in giving the instruction in response to the plaintiff's third prayer, for which there must be another trial.

New Trial.